UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TAMMY L. KELLY *as Power of Attorney for* JOHN M. MOUDY,

Plaintiffs,

v.

SNAP-ON INCORPORATED, *et al.*,

Defendants.

---

21-CV-729-LJV
DECISION & ORDER

On February 16, 2021, the plaintiffs, Tammy L. Kelly and John M. Moudy, filed a complaint in New York State Supreme Court, Niagara County. Docket Item 2-2. They allege that Moudy sustained serious injuries after he was struck by a “van truck” operated by Nicholas J. Prohaska, a purported agent of Snap-on Incorporated and Snap-on Tools Company, LLC (collectively, the “Snap-on defendants”). *Id.* The plaintiffs seek relief for the Snap-on defendants’ alleged negligence in training, screening, and retaining Prohaska and “based on [the] theory of respondeat superior.” *Id.* at ¶¶ 10, 12. On June 11, 2021, the Snap-on defendants removed the case to this Court on the basis of diversity jurisdiction. Docket Item 1.

On August 31, 2021, the Snap-on defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Docket Item 13. That same day, the plaintiffs moved to join Prohaska as a defendant and, because doing so would destroy complete diversity, to remand the case back to state court. Docket Item 14. The parties responded to each other’s motions on September 14 and 23, 2021, *see* Docket Items

16 and 17, and on September 30 and October 4, 2021, both sides replied, *see* Docket Items 18 and 19.[1]

For the following reasons, the plaintiffs' motions to join Prohaska as a defendant and to remand the case, Docket Item 14, are denied without prejudice. And the Snap-on defendants' motion to dismiss, Docket Item 13, will be granted unless the plaintiffs file an amended complaint addressing the deficiencies noted below.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On March 26, 2018, Moudy "was operating his vehicle near 6739 Shawnee Road" in Wheatfield, New York, "when a Snap-on van truck operated by Nicholas J. Prohaska" struck his car. Docket Item 2-2 at ¶ 8. According to the plaintiffs, Prohaska "was an agent, servant and/or employee" of Snap-on Incorporated "and was acting within the scope of that agency" at the time of the car accident. *Id.* at ¶ 9. "As a result of the [accident]," Moudy "sustained bodily injuries and was painfully and seriously injured"; some of those injuries "resulted in permanent defects." *Id.* at ¶ 11.

[1] The Snap-on defendants responded to the plaintiffs' motions more than a week after their response was due, and they replied in further support of their motion to dismiss nearly two weeks after their reply was due. *See* Docket Items 17 and 19; *see also* L. R. Civ. P. 7(b)(2)(B). The defendants did not request an extension of time or even explain the untimeliness of either filing, and the plaintiffs therefore argue that this Court should not consider the defendants' late response to the plaintiffs' motions. *See* Docket Item 18 at 2. Although this Court can and does accept the late filings, the defendants are warned that further failure to comply with motion deadlines may result in this Court's deciding any future motions on the plaintiffs' papers alone.

[2] On a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

About a year after the accident, Kelly and Moudy sued Prohaska and Snap-on Credit LLC in New York State Supreme Court, Niagara County.[3] Docket Item 14-5. Nearly two years after that, Kelly and Moudy commenced a second action—this one against Snap-on Incorporated and Snap-on Tools Company, LLC—in the same court. Docket Item 2-2. In their second complaint, the plaintiffs allege that the car accident "was caused as a result of the negligent, careless, reckless and unlawful conduct on the part of the [Snap-on] defendants," including their "fail[ure] . . . to properly train [their] agents," their "fail[ure] . . . to properly and adequately screen persons with access to or authorization to use Snap-on vehicles," and their "negligent[] ret[ention] [of] Nicholas J. Prohaska." *Id.* at ¶ 10. The plaintiffs also allege that the Snap-on defendants "are liable for the actions of Nicholas J. Prohaska based on [the] theory of respondeat superior." *Id.* at ¶ 12. But the plaintiffs allege only that Prohaska "operated" the "Snap-on van truck" that struck Moudy's car; they do not even claim that Prohaska was negligent in driving the vehicle that injured Moudy. *See id.* at ¶ 8.

According to the plaintiffs, they "commenced [those] two separate but related actions . . . with the intent to consolidate the[m] in New York [State] Supreme Court, Niagara County." Docket Item 14-2 at ¶ 8. But before the plaintiffs could move to

---

[3] In the first action, the plaintiffs alleged that Snap-on Credit LLC "is liable and responsible for the acts of negligence of" Prohaska under New York Vehicle and Traffic Law § 388. *See* Docket Item 14-5 at ¶ 15; *see also* N.Y. Veh. & Traf. Law § 388(1) (imposing liability on vehicle owners "for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the [vehicle] with the permission, express or implied, of such owner"). In this case, by contrast, the plaintiffs allege that the Snap-on defendants are liable for Prohaska's actions under the theory of *respondeat superior* rather than on statutory grounds. *See* Docket Item 2-2 at ¶ 12. But in this case, the plaintiffs do not allege that Prohaska was negligent—or, indeed, anything that might give rise to Prohaska's liability for Moudy's injuries.

consolidate the first and second cases in state court, the Snap-on defendants—both foreign companies organized outside New York State with principal places of business in Wisconsin—removed the second case to this Court. *See* Docket Item 2. And once the case was here, the Snap-on defendants moved to dismiss, and the plaintiffs then moved to join Prohaska as a defendant and to remand the case back to state court. *See* Docket Items 13 and 14.

## LEGAL PRINCIPLES

### I. MOTION TO JOIN NON-DIVERSE DEFENDANT

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "To decide whether to permit diversity-destroying joinder, courts in this circuit generally apply a two-part test." *Barber v. Somal Logistics Ltd.*, 2021 WL 2159646, at *2 (W.D.N.Y. May 27, 2021). "First, the court must determine whether joinder is permissible under Rule 20(a)(2); then, if so, the court must conduct a 'fundamental fairness' analysis to determine whether the balancing of certain factors weighs in favor of joinder and its necessarily attendant remand." *Id.* (internal quotation marks omitted).

Under Rule 20(a)(2), multiple defendants "may be joined in one action" if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "(B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). If joinder is permissible under Rule 20(a)(2), the court then considers "whether joinder that will lead to [] remand to state court comports

with principles of fundamental fairness." *Abraham Nat. Foods Corp. v. Mount Vernon Fire Ins. Co.*, 576 F. Supp. 2d 421, 424-25 (E.D.N.Y. 2008). Under that analysis, the court evaluates: "(1) any delay, as well as the reason for delay, in seeking joinder; (2) [the] resulting prejudice to [the] defendant; (3) [the] likelihood of multiple litigation; and (4) [the] plaintiff's motivation for the amendment." *Hudson EFT, LLC v. Westchester Surplus Lines Ins. Co.*, 2020 WL 6712203, at *3 (S.D.N.Y. Nov. 16, 2020).

## II. MOTION TO DISMISS UNDER RULE 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (alterations omitted) (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

### I. MOTIONS TO JOIN AND TO REMAND

The plaintiffs have moved to join Prohaska, a New York resident, as a defendant and to remand this case to state court. *See* Docket Item 14; Docket Item 14-2 at ¶ 9. They say that joining Prohaska "is permissible under Rule 20(a)(2)" because their "claims against [Prohaska] arise out of the collision already at issue in this case." Docket Item 14-1 at 7. And they argue that the four relevant "fundamental fairness" factors—the reason for the delay, the prejudice to the defendants, the likelihood of multiple litigation, and their motivation for joinder—favor joinder and remand here. *See id.* at 7-9.

But the plaintiffs did not bring any claims against Prohaska in their complaint against the Snap-on defendants, nor did they submit a proposed amended complaint asserting any such claims.[4] Indeed, the complaint at issue does not even allege that Prohaska was negligent in operating the vehicle that struck Moudy. *See generally* Docket Item 2-2. So the plaintiffs have not actually asserted any "right to relief" against Prohaska or otherwise suggested what their claims against him would be. Instead, the only claims in the complaint before this Court are the plaintiffs' vicarious liability claim against the Snap-on defendants for something that Prohaska did and their claim against

[4] A proposed amended complaint is a required exhibit in a motion to amend a complaint. *See* L. R. Civ. P. 15(a) ("A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion. The proposed amended pleading must be a complete pleading superseding the original pleading in all respects."). Because the plaintiffs' motion to assert new claims against Prohaska necessarily is also a motion to amend the complaint, it was incumbent on the plaintiffs to submit a proposed amended complaint with their motion.

the Snap-on defendants for the Snap-on defendants' own negligent behavior. *See id.* at ¶¶ 10, 12.

Because the plaintiffs have not demonstrated any "right to relief" against Prohaska, this Court cannot join him as a defendant under Rule 20(a)(2). *See Busby v. Capital One, N.A.*, 759 F. Supp. 2d 81, 88 (D.D.C. 2011) (denying joinder where "the operative complaint does not contain any allegations supporting claims against th[e] proposed defendant" and therefore "no right to relief has been asserted against" it (citing Fed. R. Civ. P. 20(a)). For that reason, the plaintiffs' motions to join Prohaska as a defendant and to remand, Docket Item 14, are denied without prejudice.[5] Within 30 days of the date of this order, the plaintiffs may renew those motions consistent with this decision.

## II. MOTION TO DISMISS

The Snap-on defendants have moved to dismiss the plaintiffs' claims against them. Docket Item 13. They argue that the complaint contains only legal conclusions and that, in any event, as franchisors they are not liable for the acts of their franchisee.[6]

---

[5] Because the plaintiffs have not actually asserted any "right to relief" against Prohaska, *see* Fed. R. Civ. P. 20(a), this Court does not address whether joining Prohaska as a defendant would satisfy the fundamental fairness factors. *See generally Barber*, 2021 WL 2159646, at *2.

[6] The defendants have attached the purported franchise agreement to their motion to dismiss, but the plaintiffs argue that the agreement cannot be considered on that motion. *See* Docket Item 13-2; Docket Item 16 at 6-7. Generally, a court deciding a motion to dismiss may consider "(1) the facts alleged on the face of the complaint; (2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice." *Acquest Holdings, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 217 F. Supp. 3d 678, 683 (W.D.N.Y. 2016). The defendants do not explain why this Court can consider the franchise agreement, and it is not at all clear that the agreement falls under any one of those four aforementioned categories. Nevertheless, and for the reasons that follow,

*See* Docket Item 13-10. The plaintiffs counter that "accepting the allegations as true, the [c]omplaint alleges causes of action against [the] defendants . . . under the doctrine of *respondeat superior*" because "employers may be liable . . . for [the] negligence of an employee committed while [the] employee is acting in [the] scope of his employment."[7] Docket Item 16 at 7. Beyond that general assertion, however, the plaintiffs do not point to any allegations in the complaint suggesting that Prohaska was an employee of the Snap-on defendants and was acting within the scope of his employment at the time of the accident.

"Under the doctrine of *respondeat superior*, an employer will be liable for the negligence of an employee committed while the employee is acting in the scope of his employment."[8] *Lundberg v. State of New York*, 25 N.Y.2d 467, 470, 255 N.E.2d 177,

---

this Court agrees with the Snap-on defendants that the complaint is subject to dismissal even without considering the franchise agreement.

What is more, while the Snap-on defendants argue that they cannot be held liable as a franchisor for the acts of their franchisee, *see* Docket Item 13-10 at 10-18, the plaintiffs say that the Snap-on defendants are liable for Prohaska's actions under a theory of *respondeat superior*, *see* Docket Item 16 at 6-7. This Court therefore evaluates the sufficiency of the plaintiffs' allegations based on the theory of *respondeat superior*.

[7] The plaintiffs also say that the Snap-on defendants' motion should be denied because this Court lacks subject matter jurisdiction. *See* Docket Item 16 at 4-5. But this Court has subject matter jurisdiction because the plaintiffs and the Snap-on defendants—the only parties in this case—are completely diverse and no party contends that the necessary amount in controversy is not satisfied. *See* Docket Item 2 at ¶¶ 7-22; 28 U.S.C. § 1332. So the plaintiffs' argument to the contrary is, at bottom, simply an argument that their motions to join an additional defendant and to remand should be decided before the Snap-on defendants' motion to dismiss is decided. This Court did just that, *see supra* at 6-7, and denies those motions for the reasons stated above.

[8] For the reasons stated below, the plaintiffs have not adequately alleged how the Snap-on defendants are liable for Prohaska's conduct. But even more

179 (1969). "An employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." *Id.* Generally, "[a]n employer-employee relationship exists when . . . the employer exercises control over the results produced or the means used to achieve the results." *In re Empire State Towing & Recovery Ass'n*, 15 N.Y.3d 433, 437, 938 N.E.2d 984, 986 (2010). "[C]ontrol over the means is the more important factor to be considered." *Id.* "Factors relevant to assessing control include whether a worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." *Sanabria v. Aguero-Borges*, 117 A.D.3d 1024, 1025, 986 N.Y.S.2d 553, 555 (2d Dep't 2014).

The only factual allegation in the complaint that might bear on whether the Snap-on defendants could be liable as Prohaska's employer is that Moudy was struck by a "Snap-on van truck operated by Nicholas J. Prohaska." Docket Item 2-2 at ¶ 8. Whether the putative employer supplies necessary equipment to the putative employee is a factor that could be considered in evaluating a purported employer-employee relationship. *See* Restatement (Third) of Agency, § 7.07 cmt. f. But it is not clear from the complaint that either of the defendants in this case owned, leased, or otherwise controlled the "van truck" at issue.[9] And beyond that lone factual allegation, the

---

fundamentally, and as noted above, their complaint is devoid of allegations that Prohaska himself was negligent.

[9] In the complaint, the plaintiffs refer to the defendants as "SNAP-ON" and "SNAP-ON TOOLS" (capitalized in original) and allege that Prohaska was driving a "Snap-on van truck" (not capitalized in original) at the time of the accident. *See* Docket

plaintiffs offer nothing more than legal conclusions about any employer-employee relationship between Prohaska and any Snap-on entity. *See* Docket Item 2-2 at ¶ 9 (alleging "[u]pon information and belief" that "Prohaska was an agent, servant and/or employee of the defendant, SNAP-ON, and was acting within the scope of that agency")[10]; *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (allegations that the defendants "were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment" are "conclusory legal statement[s] unsupported by any factual assertion[s]" and therefore are not credited as true); *Rousseau v. Coates*, 2019 WL 3220327, at *5 (D. Vt. July 17, 2019) (because an employer-employee "carries legal significance" under the doctrine of *respondeat superior*, a court "is not bound to accept as true a legal conclusion" that a putative employee "was either an employee or agent" of a putative employer (internal quotation marks omitted)).

And the plaintiffs' allegations that the Snap-on defendants can be held liable for their own negligent conduct are just as thin. To support that claim, the plaintiffs offer only, "[u]pon information and belief," that the accident "was caused as a result of the negligent, careless, reckless and unlawful conduct on the part of" the Snap-on

---

Item 2-2 at ¶¶ 4, 6, 8. And while parsing that discrepancy in capitalization may seem like splitting hairs, the plaintiffs apparently alleged in the first state court action that another entity—Snap-on Credit LLC—owned the "van truck" in question. *See* Docket Item 14-5 at ¶ 8 (alleging that Snap-on Credit LLC "was the owner of [the] van truck").

[10] What is more, the plaintiffs make those conclusory allegations about an employer-employee relationship only between Prohaska and defendant Snap-on, Incorporated. *See* Docket Item 2-2 at ¶ 9. As to defendant Snap-on Tools Company, LLC, they simply allege that "SNAP-ON TOOLS[] [is] liable" for Prohaska's actions "based on [the] theory of respondeat superior." *Id.* ¶ 12.

defendants, including their "fail[ure] . . . to properly train [their] agents," their "fail[ure] . . . to properly and adequately screen persons with access to or authorization to use Snap-on vehicles," and their "negligent[] ret[ention] [of] Nicholas J. Prohaska." Docket Item 2-2 at ¶ 10. But those "naked assertions," which are "devoid of further factual enhancement," are not credited as true. *See Iqbal*, 556 U.S. at 678 (alterations omitted) (quoting *Twombly*, 550 U.S. at 557). And without any other factual allegations, this Court can only speculate about how the Snap-on defendants engaged in any "negligent, careless, reckless and unlawful conduct" of their own. Docket Item 2-2 at ¶ 10.

In sum, the complaint includes little more than legal conclusions and therefore does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). For that reason, the plaintiffs' claims against the Snap-on defendants are subject to dismissal.

## III. LEAVE TO AMEND

The plaintiffs do not request leave to amend in their opposition, *see* Docket Item 16, nor did they submit a proposed amended complaint in connection with their motion to add Prohaska as a defendant, *see* L. R. Civ. P. 15(a). "While leave to amend under the Federal Rules of Civil Procedure is 'freely g[iven],' *see* Fed. R. Civ. P. 15(a), no

---

[11] To survive a motion to dismiss, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). So in any amended complaint, the plaintiffs must plausibly allege how Prohaska was negligent and why the Snap-on defendants are liable for his conduct—in other words, why they believe that he was an employee of the Snap-on defendants acting within the scope of his employment at the time of the accident.

court can be said to have erred in failing to grant a request that was not made." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). So this Court therefore need not give the plaintiffs an opportunity to correct the deficiencies noted above.

Nevertheless, the Court grants the plaintiffs leave to amend their complaint. *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("[T]his circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."). Within 30 days of the date of this order, the plaintiffs may file an amended complaint addressing the deficiencies noted in the preceding section.[12]

## CONCLUSION

For the reasons stated above, the plaintiffs' motions to join an additional defendant and to remand, Docket Item 14, are DENIED. The plaintiffs may renew those motions, correcting the deficiencies outlined above, within 30 days of the date of this order. Likewise, the Snap-on defendants' motion to dismiss, Docket Item 13, will be GRANTED unless, within 30 days of the date of this order, the plaintiffs file an amended complaint correcting the deficiencies outlined above. The Snap-on defendants may answer, move against, or otherwise respond to any amended complaint within 30 days after the amended complaint is filed. If the plaintiffs do not file an amended complaint within 30 days, then their complaint will be dismissed and the Clerk of the Court shall close the case without further order.

[12] And as noted above, the plaintiffs separately may move to assert any claims against Prohaska and to remand the case.

SO ORDERED.

Dated: July 14, 2022
Buffalo, New York

***/s/ Lawrence J. Vilardo***
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE